CRAIG A. GELFOUND (SBN 176378)
craig.gelfound@afslaw.com
TRACY LUU-VARNES (SBN 281165)
tracy.luu-varnes@afslaw.com
**ARENTFOX SCHIFF LLP**
555 West Fifth Street, 48th Floor
Los Angeles, CA 90013
Telephone: 213.629.7400
Facsimile: 213.629.7401

Attorneys for Plaintiff
SCOSCHE INDUSTRIES, INC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| SCOSCHE INDUSTRIES, INC., | Case No. 2:22-cv-9030 |
|---|---|
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | 1. **Breach of Contract** |
| S & T MONTGOMERY DISTRIBUTING, INC., d/b/a MONTGOMERY DISTRIBUTING INC.; SCOTT MONTGOMERY; PATRICIA MONTGOMERY, | 2. **Breach of Implied Covenant of Good Faith and Fair Dealing** <br> 3. **Fraud – Intentional Misrepresentation** <br> 4. **Fraud – Negligent Misrepresentation** |
| Defendants | 5. **Conspiracy to Commit Fraud** <br> 6. **Unfair Competition in Violation of California Business & Professions Code §17200** |
| | **DEMAND FOR JURY TRIAL** |

Plaintiff Scosche Industries, Inc. ("Scosche") brings the following Complaint against Defendants S & T Montgomery Distributing, Inc., Scott Montgomery, and Patricia Montgomery (collectively referred to as "Defendants").  In support of its Complaint, Scosche alleges as follows:

## PARTIES

1.      Plaintiff Scosche is a California corporation with its principal place of business in Ventura County, California. Scosche manufactures and distributes consumer technology, powersports and car audio products.

2.      On information and belief, S & T Montgomery Distributing, Inc. is an Alabama corporation with its principal place of business in Franklin County, Alabama.  On information and belief, S&T Montgomery Distributing is also doing business as Montgomery Distributing, Inc. ("MDI").  On information and belief, the nature of MDI's business is to provide warehouse and distribution facilities and management and logistics services.

3.      On information and belief, Scott Montgomery ("Scott") is an individual who resides in Alabama.  On information and belief, Scott is the Secretary of S & T Montgomery Distributing, Inc..

4.      On information and belief, Patricia Montgomery ("Tricia") is an individual who resides in Alabama.  On information and belief, Tricia is the President, registered agent and incorporator of S & T Montgomery Distributing, Inc..

5.      On information and belief, during the relevant period alleged in this Complaint, Scott and Tricia were also doing business as MDI, a fictitious entity. Defendants requested that Scosche wire payments for the services performed by Defendants pursuant to the agreements referenced herein to a bank account and the account holder(s) are identified as: "Scott Montgomery" and "Montgomery Distributing, Inc."  Tricia executed the agreements referenced herein on behalf of MDI, a fictitious entity, and is therefore obligated on the agreements.

## DIVERSITY JURISDICTION AND VENUE

6.     This Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1332 (a)(1), in that the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

7.     There is complete diversity of citizenship between Scosche and Defendants. (See U.S.C. § 1332(a) (1)).

8.     Venue is appropriate in California because Ventura County is where Scosche's injuries occurred.  Also, the parties contractually agreed that this would be the proper venue.

## GENERAL ALLEGATIONS

9.     On or about January 1, 2009, Scosche and MDI entered into the Management Services Agreement ("Management Agreement"), attached hereto as Exhibit A.

10.     Pursuant to the Management Agreement, MDI was "to provide services related to manufacturing operations and distribution of Scosche products… MDI agrees to provide such services and perform such functions as determined by Scosche and may include, but is not limited to: receipt, warehousing, assembly, order processing, distribution and shipping of Scosche products." (Management Agreement, Paragraph 2.)

11.     Pursuant to the Management Agreement, "MDI shall be responsible for the employment of any and all personnel necessary to accomplish its responsibilities under this agreement.  Further, MDI warrants that it will employ sufficient personnel to accomplish its responsibilities under this agreement." (Management Agreement, Paragraph 3.)

12.     Pursuant to the Management Agreement, "MDI warrants that it, its officers, and employees will comply with any and all Scosche policies, procedures,

code of conduct, and other business practices, and shall take no action that violates the Scosche building lease." (Management Agreement, Paragraph 6.)

13.     Pursuant to the Management Agreement, "Scosche agrees to reimburse MDI monthly for the cost of MDI personnel used to comply with Paragraph 3 of this agreement at an hourly rate mutually agreed to from time to time by both parties.  Hours billed will be consistent both with the volume of work processed and historical averages."  (Management Agreement, Paragraph 4.)  Pursuant to the Management Agreement, Defendants were compensated with 2% of the total sales.

14.     On August 14, 2013, MDI and Scosche entered into a Warehouse and Logistics Agreement ("Logistics Agreement") attached hereto as Exhibit B.  The Logistics Agreement contained the same obligations and terms for the parties as the Management Agreement, including those set forth herein.  The parties further agreed that Defendants would be compensated for its services by Scosche with a flat management fee, plus reimbursement for expenses, including but not limited to utilities and for payroll of Defendants' employees, instead of with a percentage of sales.

15.     Beginning in 2009 until on or about October 2022 and pursuant to the Management Agreement and the Logistics Agreement (hereinafter collectively referred to as the "Agreements"), Defendants employed individuals to perform services identified in the Agreements.   Pursuant to the Agreements, upon the completion of a calendar month, Defendants would send Scosche monthly employee bill hour summaries ("Monthly Employee Bill Hour Summary") which identified the names of employees and the number of hours each employee worked during that month.  The sum on the Monthly Employee Bill Hour Summary is the sum Defendants sought reimbursement for in its monthly invoices ("Invoices") to Scosche.

16.     Scosche duly paid Defendants the sums identified on the Invoices.

17.   On or about October 2022, Scosche realized that Defendants had been submitting inaccurate Monthly Employee Bill Hour Summaries and Invoices to Scosche as Defendants represented that certain employee(s) worked a certain number of hours during a period, when in fact, during that specified period, the employee(s) were either not employed by Defendants and/or did not work the number of hours claimed.  Defendants had a practice of misrepresentations and bad faith fraudulent conduct, and the following are examples of Defendants' pattern and practice:

        a.    Brianna S. was terminated on or about July 7, 2022.  Yet, on or about August 2022, Defendants sent Scosche a Monthly Employee Bill Hour Summary and Invoice for the month of July.  The Monthly Employee Bill Hour Summary reported that Brianna S. "worked" 91 hours after her termination. The July Invoice included a line item for payroll, which was the sum reported on the Monthly Employee Bill Hour Summary. Defendants issued the July Invoice to Scosche when Defendants knew that Brianna S. was not employed during that period.  At the time Defendants sent Scosche the Invoice and demanded payment, Scosche did not know, nor did it have any reason to know of Defendants' concealment, misrepresentations and fraud, and paid the Invoice in full.

        b.    Debbie M. was terminated on or about February 2022.  Yet, Defendants continued to issue Monthly Employee Bill Hour Summaries and Invoices which reported that Debbie M. was "employed" and billed Scosche for Debbie M. until August 2022, approximately six months after Debbie M.'s termination. Defendants knew that the Monthly Employee Bill Hour Summaries and Invoices Defendants submitted to Scosche were

inaccurate.  At the time Defendants sent Scosche the Invoice and demanded payment, Scosche did not know, nor did it have any reason to know of Defendants' concealment, misrepresentations and fraud, and paid the Invoices in full.

c.      Marty B. was terminated on or about March 2022. Yet, Defendants continued to issue Monthly Employee Bill Hour Summaries and Invoices which reported that Marty B. was still employed by Defendants and billed Scosche for Marty B. through April 2022.  Defendants knew that the Monthly Employee Bill Hour Summaries and Invoices submitted to Scosche were inaccurate.  At the time Defendants sent Scosche the Invoice and demanded payment, Scosche did not know, nor did it have any reason to know of Defendants' concealment, misrepresentations, and fraud, and paid the Invoices in full.

d.      On information and belief, Tim S. was terminated on or about February or March 2022. However, Defendants continued to issue Monthly Employee Bill Hour Summaries and Invoices to Scosche which reported that Tim S. continued to be employed and billed Scosche for Tim S. through May 2022. Defendants knew that the Monthly Employee Bill Hour Summaries and Invoices submitted to Scosche were inaccurate.  At the time Defendants sent Scosche the Invoice and demanded payment, Scosche did not know, nor did it have any reason to know of Defendants' concealment, misrepresentations and fraud, and paid the Invoice in full.

The examples above are not exhaustive.  Scosche has just began its investigation and believe that Defendants had a regular practice of falsifying documents and overbilling Scosche.

18.    On November 3, 2022, as a result of Defendants' bad faith and fraudulent conduct, Scosche terminated Defendants' services.

## **CLAIMS FOR RELIEF**

## **FIRST CLAIM FOR RELIEF**

### **Breach of Contract**

### **(Against All Defendants)**

19.    Scosche incorporates by reference paragraphs 1 through 18 of this Complaint as though fully set forth therein.

20.    Scosche and Defendants entered into valid and enforceable Agreements that govern the relationship between them with respect to the facts alleged herein.

21.    Scosche has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms of the parties' Agreements, except those things for which performance was waived, excused, or prevented by Defendants.

22.    Without limitation, the material provisions of the Agreements required Defendants to send Scosche invoices for reimbursement of the wages Defendants paid to their employees for services provided pursuant to the Agreements.

23.    Defendants were also obligated to comply with any and all Scosche's policies, procedures, code of conduct, and business practices.

24.    Defendants breached the Agreements by submitting false and inaccurate Monthly Employee Bill Hour Summaries and Invoices to Scosche, as Defendants represented that certain employee(s) worked a certain number of hours during a period, when in fact, during that specified period, the employee(s) were either not employed by Defendants and/or did not work the number of hours claimed.

25.     Defendants also breached the Agreements by failing to comply with Scosche's policies, procedures, code of conduct and other business practices that require truth, honesty and fairness.

26.     As a result of Defendants' breaches, Scosche has suffered damages in an amount in excess of $75,000 with the exact amount to be proven at trial.

## SECOND CLAIM FOR RELIEF
### Breach of Implied Covenant of Good Faith and Fair Dealing
### (Against All Defendants)

27.     Scosche incorporates by reference paragraphs 1 through 26 of this Complaint as though fully set forth therein.

28.     Implied in every contract is a covenant of good faith and fair dealing.

29.     Scosche and Defendants entered into the Agreements.

30.     Defendants failed to act fairly and in good faith, by among other things, Defendants represented to Scosche that certain employee(s) worked a certain number of hours during a period, when in fact, during that specified period, the employee(s) were either not employed by Defendants and/or did not work the number of hours claimed.

31.     As a direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing implied in the agreements, Scosche has suffered financial and economic damages in an amount in excess of $75,000, the exact amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
### Fraud – Intentional Misrepresentation
### (Against All Defendants)

32.     Scosche incorporates by reference paragraphs 1 through 31 of this Complaint as though fully set forth therein.

33.     Defendants intentionally made false representations and omissions of material facts to Scosche, as set forth with particularity throughout this Complaint,

with the intent to deceive, or in reckless disregard of their falsity or materiality, and with the intent that Scosche act in reliance upon Defendants' false statements and/or omissions of material fact.

34.     Defendants had a practice of sending Scosche Monthly Employee Bill Hours Summaries and Invoices for the reimbursement of wages paid to certain employees that Defendants represented were employed and performed work for Defendants during the period identified on the invoice.  Scosche has learned that the representations were false and untrue as certain employees which Defendants invoiced Scosche for were no longer employed by Defendants, nor did they perform any services during the period the Invoice covered, including but not limited to those identified herein in Paragraph 17.

35.     Defendants' representations as to the employees identified in Paragraph 17 and possibly additional employees, were false and known to be false by the Defendants at the time Defendants submitted the Monthly Employee Bill Hours Summaries and Invoices to Scosche for payment.

36.     Defendants intentionally misrepresented and/or concealed the true facts from Scosche to induce Scosche to make substantial overpayments to Defendants for services not rendered, thereby depriving Scosche of its money.

37.     As a further direct, actual and proximate result of the aforementioned conduct of said Defendants, and each of them, Scosche has suffered damages in a sum in excess of $75,000, the exact amount to be determined according to proof at trial.

38.     As a further, direct, actual and proximate result of the aforementioned conduct of Defendants, Scosche has been obliged to expend or incur liability for costs of suit, attorney's fees and related expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

39.     In engaging in the conduct alleged above, Defendants acted willfully, wantonly, and maliciously with the intent to cause Scosche injury and harm.

Accordingly, Defendants' conduct warrants and Scosche requests an award of punitive damages sufficient to punish them and to deter others from similar conduct in the future.

### FOURTH CLAIM FOR RELIEF

### Fraud – Negligent Misrepresentation

### (Against All Defendants)

40.     Scosche incorporates by reference paragraphs 1 through 39 of this Complaint as though fully set forth therein.

41.     Defendants represented to Scosche, in Monthly Employee Bill Hour Summaries and Invoices, that Defendants employed certain employees and that those employees worked a certain number of hours for Defendants during a specific period.  Defendants then sent Invoices to Scosche for reimbursement of the sums allegedly paid to those employees for the hours allegedly worked.

42.     The representations as to the employee's employment status and hours allegedly worked were false and untrue as certain employees, including but not limited to the employees identified herein in Paragraph 17, were not employed by Defendants during the invoiced periods, nor did they perform any services during those periods.

43.     Defendants were making affirmative assertions of the accuracy of the information set forth in the Monthly Employee Bill Hour Summaries and Invoices with no reasonable grounds for believing those assertions to be true.  Defendants knew or should have known that the information in the Monthly Employee Bill Hour Summaries and Invoices that were sent to Scosche for payment were false.

44.     Defendants intended that Scosche rely on their representations on the Monthly Employee Bill Hour Summaries and Invoices and Scosche did in fact reasonably rely on Defendants' representations.

///

///

45.     As a direct, actual and proximate result of the aforementioned conduct of Defendants, Scosche has been damaged in a sum in excess of $75,000, the exact amount to be determined according to proof at trial.

46.     As a further, direct, actual and proximate result of the aforementioned conduct of Defendants, Scosche has been obliged to expend or incur liability for costs of suit, attorney's fees and related expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

## FIFTH CLAIM FOR RELIEF

### Conspiracy to Commit Fraud

### (Against Scott and Tricia)

47.     Scosche incorporates by reference paragraphs 1 through 46 of this Complaint as though fully set forth therein.

48.     Scott and Tricia had an agreement that Defendants would submit false and inaccurate Monthly Employee Bill Hour Summaries and Invoices and overbilled Scosche.  Scott and Tricia represented that certain employee(s) worked a certain number of hours during a period, when in fact, during that specified period, the employee(s) were either not employed by Scott and Tricia and/or did not work the number of hours claimed.

49.     Scott and Tricia sent Scosche the inaccurate Monthly Employee Bill Hour Summaries and inflated Invoices for payment, and Scosche, unaware of Scott and Tricia's agreed intent and bad faith conduct, duly paid the Invoices in full.

50.     Scosche has been harmed by Scott and Tricia's wrongful acts, as Scosche overpaid Defendants based on the inflated Invoices.

51.     By reason of Scott and Tricia's conduct, Scosche is entitled to an award of damages against Defendants in an amount to be determined at trial.

52.     Further, Scott and Tricia acted fraudulently, oppressively, willfully, recklessly, wantonly and despicably, with an improper motive to overcharge Scosche, amounting to fraud within the meaning of Civil Code Section 3294.

1  Scosche is thus entitled to recover punitive damages from Scott and Tricia,
2  inclusive, in an amount according to proof.

3  ### SIXTH CLAIM FOR RELIEF

4  ### Unfair Competition in Violation of California Business & Professions Code
5  ### §17200

6  **(Against All Defendants)**

7      53.    Scosche incorporates by reference paragraphs 1 through 52 of this
8  Complaint as though fully set forth therein.

9      54.    California's Unfair Competition Law ("UCL") prohibits, among other
10  things, any fraudulent, unlawful, or unfair business practice.  Defendants' conduct
11  as alleged herein in unlawful and unfair in violation of the UCL.

12      55.    Defendants' conduct violates the UCL's unlawful prong in that the
13  conduct violates longstanding California common law prohibiting a wrongdoer
14  from receiving unjust enrichment as a result of its wrongdoing, to the detriment of
15  another.

16      56.    Defendants' conduct violates the UCL's unfair prong because their
17  practices constitute unfair business practices under California law.  Those practices
18  include, but are not limited to, fraud, concealment, and misrepresentation by
19  Scosche for services that were not actually rendered.

20      57.    Scosche has been harmed as a result of Defendants' wrongful conduct,
21  including paying Defendants substantial sums of money that Defendants were not
22  entitled to.

23      58.    Defendants have materially benefited from their wrongful conduct.

24      59.    Scosche is therefore entitled to damages in an amount to be determined
25  at trial.

26  ///
27  ///
28  ///

ARENTFOX SCHIFF LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -                                                        COMPLAINT

1

## **PRAYER FOR RELIEF**

2
3

WHEREFORE, Scosche prays that the Court issue the following relief as to each Defendant:

4

A.     For judgment in favor of Scosche on each and all of its claims;

5

B.     Damages in an amount in excess of $75,000;

6

C.     Punitive and exemplary damages;

7

D.     Scosche's attorney's fees and costs; and

8
9

E.     All such other and further relief as the Court may deem just, proper and equitable.

10

11

Dated:        December 13, 2022              **ARENTFOX SCHIFF LLP**

12

13

By: _Craig Gelfound_____

14

CRAIG A. GELFOUND
TRACY LUU-VARNES

15

Attorneys for Plaintiff
SCOSCHE INDUSTRIES, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## JURY DEMAND

2       Pursuant to Federal Rule of Civil Procedure 38(b)(1), Scosche demands a

3   trial by jury.

4

5   Dated:        December 13, 2022        **ARENTFOX SCHIFF LLP**

6

7                                         By: _Craig Gelfound_____
                                          CRAIG A. GELFOUND

8                                         TRACY LUU-VARNES
                                          Attorneys for Plaintiff

9                                         SCOSCHE INDUSTRIES, INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28